## Richmond.

### WINFREE v. FIRST NATIONAL BANK OF LEXINGTON.

#### APRIL 6, 1899.

1. PRINCIPAL AND AGENT—*Special Agent—Transgressing Authority.*—A special agent who is authorized to dismiss the suit of his principal only on special terms designated in writing transgresses his authority in dismissing the suit on any other terms, without the knowledge of his principal, and the right of the principal to prosecute a new suit for the same debt, and to recover judgment therefor against principal and surety is unaffected by such dismissal.

2. APPEAL AND ERROR—*Erroneous Instructions—Correct Verdict—Harmless Error.*—This court will not reverse the action of the trial court on account of erroneous instructions given, where it can be seen from the whole record that, even under correct instructions, a different verdict could not have been found by the jury.

Error to a judgment of the Corporation Court of the city of Lynchburg rendered October 16, 1897, in a proceeding by a motion for a judgment for money, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*J. E. Edmunds* and *Harrison & Long*, for the plaintiff in error.

*Caskie & Coleman* and *Winbourne & Batchelor*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This was a proceeding by motion to recover judgment on a negotiable note made by B. E. Hughes, and endorsed by J. B. Winfree. The endorser resisted the judgment upon the following grounds of defence:

" 1. That the plaintiff extended the time of payment of the note on which its action is brought, by a binding agreement with the principal, B. E. Hughes, without the consent of the endorser and defendant, John B. Winfree.

. " 2. That the plaintiff brought its action against the said parties on the same paper on which it now seeks judgment, to-wit: to the March term of the Corporation Court of the city of Lynchburg, Va., and afterwards entered into a binding agreement for a valuable consideration with the maker and principal, B. E. Hughes, to extend the time of payment, and dismiss the action and not take judgment till some subsequent term, which agreement was without the knowledge and consent of the said John B. Winfree."

It is not necessary to decide whether an agreement between the holder of a protested negotiable note and the principal, to dismiss a suit voluntarily instituted thereon without the knowledge or consent of the endorser, is such an extension of time to the principal as will discharge the endorser. No such agreement as that relied on is established in the case at bar. It abundantly appears from the evidence that the only agreement ever made by the defendant in error in respect to the matter is fully and completely embodied in the following letter:

" FIRST NATIONAL BANK OF LEXINGTON,
" LEXINGTON, VA., March 10, 1897.

" DEAR GARLAND:                                                          ι!

" I enclose you herewith memorandum of Ben Hughes' note showing balance due to March 3d to be $2,078.45.

" He submitted us a proposition a short time ago that he would pay us $1,600 on this debt if we would suspend judgment. He paid $600 on March 3d. Now, if he will pay $1,000 more, including $10 attorney's fee here, and the court costs down there, and give note payable April 15th, interest included, for the balance, with same endorsement (of course, Mr. Winfree will have to consent to all this, but endorsing new note will accomplish his consent), we will dismiss the suit entirely, provided he promises in good faith to pay the new note when due, 15th April.

" Batchelor will send you the note from Buena Vista, by to-day's mail. If the terms as above stated are not complied with, I want you to go by the court-house on Friday and give Wingfield the note, and tell him to enter judgment before the adjournment of court.

" I hear it will adjourn on Saturday. Don't fail to see Wingfield on Friday. Hughes wired me he would deposit $400 on yesterday at the Lbg. Nat. You can find out about this. If he complies with the terms stated above, you can take note up, and ask Wingfield to dismiss suit when costs are paid.

" I will appreciate your attention to this for me.

Hastily yours,

B. E. VAUGHAN, Cashier.

P. S. You can show this letter to Hughes."

It appears that B. E. Hughes, the maker of the note, went to Lexington and submitted the proposition contained in this letter to the Cashier of the plaintiff Bank, and suggested to the Cashier that he negotiate the matter through his brother Garland Vaughan in Lynchburg. The Cashier agreed to submit the proposition to the board of directors for their action, and after doing so wrote B. E. Hughes the following letter:

" LEXINGTON, VA., March 10, 1897.

" Mr. B. E. HUGHES, Lynchburg, Va.:

" Dear Sir,—Your telegram of yesterday came duly to hand. If you will call on Mr. G. E. Vaughan, he will show you a letter regarding the matter in question.

" Your proposition made to me when you were here is set forth in this letter, and our board accepted it, but they would not alter their position yesterday.          Hastily yours,

B. E. VAUGHAN."

After receiving this letter, B. E. Hughes made an effort to secure a modification of the agreement as set forth in the letter of the Cashier to G. E. Vaughan, by application to the latter, who wrote the Cashier the following letter:

" LYNCHBURG, VA., March 11th, 1897.

" DEAR ESTES:

" Your letter of the 10th instant, and also letter from Batchelor, enclosing Ben Hughes' note received. Hughes made the following proposition and said that he will certainly comply with his promise this time. He wants to pay $400 cash, a note payable on March 25th for $300, a note payable on the 1st and 4th of April for $300, a note payable on the 15th of April for $1,000. Of course he will pay the costs which have been incurred here in Lynchburg. Please wire me this evening or as soon as you can and let me know what to do, whether to accept his settlement, or push the matter as instructed in your letter.

Yours truly,

GARLAND."

In reply to this letter G. E. Vaughan received from the Cashier the following telegram:

" G. E. VAUGHAN, Lynchburg, Va.:

" Follow my letter. Embodies Board's action which I cannot modify.                    B. E. VAUGHAN, Cashier."

Upon the receipt of this telegram Hughes informed G. E. Vaughan that he did not want further time on the note, making the following statements in connection with that assertion, as shown by the evidence of G. E. Vaughan, which is not contradicted:

"He (meaning B. E. Hughes) says: 'I am very busy, you go in the bank and figure the interest on this note up to date and let me know what it is this evening at my office, and I will give you a check for it.' I says: ' The court adjourns this evening.' He says: ' I will give you a check for this balance.' I says: ' You are going to do what you say?' he said: ' Yes, I am.' I figured the interest and came to the court-house and saw Mr. Wingfield and asked him to dismiss the suit. I went then to Mr. Hughes and couldn't find him; I didn't find him until next day.

" Q. Why didn't you have the suit re-instated?

" A. The court was adjourned. He has never given it to me at all."

It is perfectly clear from the foregoing recital of the facts that the defendant in error made no agreement to dismiss the suit in question, except upon the terms of the letter of March 10, 1897, from the Cashier to G. E. Vaughan, one of which terms was that the plaintiff in error was to consent to the whole arrangement, and evidence his consent by endorsing the new note. Modification of these terms was persistently refused to the last as shown by the telegram from the cashier to his brother.

G. E. Vaughan was a special agent with limited authority. He had no power to dismiss the suit upon any other terms than those contained in the cashier's letter. Relying upon the assurance of Hughes that he would pay the whole note by check that

evening, G. E. Vaughan transcended his authority, and dismissed the suit. The defendant in error knew nothing about the dismissal of the suit until after the court had adjourned. So far as the bank is concerned, the unauthorized act of G. E. Vaughan is a mere nullity, its rights in respect to the note being in no way affected thereby.

In this view of the case it becomes unnecessary to consider the instructions commented upon in the petition for a writ of error, for if it were conceded that the action of the court, in respect to the instructions given and refused, was erroneous, it would be immaterial, for under the facts of the case upon correct instructions a different verdict could not have been rightly found by the jury. Where this court can see from the whole record that under correct instructions a different verdict could not have been rightly found it will not reverse. *Wright* v. *Ind. Nat. Bk.*, 96 Va. 728.

The judgment must be affirmed.

*Affirmed.*