## Richmond

THE REALTY COMPANY OF VIRGINIA, INC.,

V.

## J. W. BURCUM.

March 17, 1921.

1. INSTRUCTIONS—*Evidence to Support Instructions—Scintilla Doctrine—Party's Theory of Case.*—A trial court is not required to give instructions presenting a plaintiff's, or a defendant's, theory of a case, unless these instructions are supported by the testimony. The scintilla doctrine has not been revived in this State.

2. INSTRUCTIONS—*Party's Theory of Case—Evidence to Support.*— While a party is entitled to an instruction upon his theory of the case, this does not mean that merely because a party has a theory of the case, he is thereby entitled to an instruction upon that theory. A *sine qua non* of his right to his instruction is that it is supported by some appreciable evidence.

3. APPEAL AND ERROR—*Instructions—Must be Based on the Evidence.*—It is error to give an instruction where there is no sufficient evidence upon which to base it, as it tends to mislead the jury, and it is not error to refuse an instruction where there is no evidence upon which it could be properly based— some material fact, which is either admitted or supported by some appreciable evidence.

4. INTERPRETATION AND CONSTRUCTION—*Question of Law or Fact— Directing Verdict.*—It is the duty of the court to construe a deed, or contract, and the statute against peremptory instructions is not to be construed as applying to cases in which the verdict of the jury depends necessarily and exclusively upon a question of law, such, for example, as the legal effect of a deed or contract.

5. REAL ESTATE BROKERS—*Instructions—Peremptory Instruction Directing Verdict for Defendant.*—In an action by a real estate broker for commissions, an instruction was not erroneous as mandatory and requiring a verdict for the defendant, which,

in substance, gave the evidence upon which the plaintiff based his claim to recovery, and advised the jury that, if there was no further evidence of activity on the part of the broker, the evidence recited did not entitle the plaintiff to a verdict under the contract, and that they must find for the defendant, as the instruction did not limit the jury to the consideration of the evidence recited, or advise them that they could not find a verdict for the plaintiff, if, in their judgment, there was other evidence before them which, added to the evidence recited, would support a verdict. Nor was counsel for the plaintiff restrained by this instruction from pointing out to the jury that there was such additional evidence, and upon the basis of such evidence, plus that recited, his client was entitled to its commissions.

6.  REAL ESTATE BROKERS—*Contract Between Broker and Client— Construction of Contract.*—A contract between the Realty Company of Virginia, real estate brokers, and a client provided that: "Should said property be sold to any one with whom the Realty Company of Virginia, Inc., has negotiated for the sale thereof, or to whose attention it has directly brought the property, I agree to pay to said Realty Company of Virginia, Inc., the said commission above mentioned." The contract also contained a clause reserving the right to the client to sell, or employ others to sell, the property without compensation to the Realty Company of Virginia.

    *Held:* That the plain meaning of these two sections of the contract was that the defendant was free to sell his property without liability to the realty company, unless with respect to the sale subsequently effected, the latter's initial activities had proceeded to such an extent that they were really the "procuring cause" of that sale.

7.  REAL ESTATE BROKERS—*Liability of Client for Commissions— Purchaser's Statement to Client that he was Under no Obligations to the Brokers.*—Where a landowner, who had listed his property with a real estate broker, asked a prospective purchaser whether he was under any obligation to the broker, purchaser's answer in the negative would not relieve the landowner from liability for commissions to the broker, if as a matter of fact, the real estate broker was the "procuring cause" of the sale to the purchaser.

8.  REAL ESTATE BROKERS—*"Procuring Cause" of Sale—Case at Bar.*—In the instant case, the activities of a real estate broker were held not to be the "procuring cause" of a sale of property listed with the broker, notwithstanding that the broker pointed out the property to the purchaser while driving past

it to view another place, described the house and boundaries, stated the price, and offered to drive in if the purchaser desired, which offer he declined, there being evidence to show that the purchaser's interest in the place was quickened by a description from an independent source the following day, which prompted a trip to the place with another party, that led to the negotiations and the ultimate purchase.

Error to a judgment of the Circuit Court of Nottoway county in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Henry E. Lee* and *W. Moncure Gravatt,* for the plaintiff in error.

*H. H. Watson,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This case is brought before us by a writ of error to the judgment of the Circuit Court of Nottoway county. The controversy relates to certain commissions alleged to be due by J. W. Burcum to the Realty Company of Virginia, plaintiff in error.

J. W. Burcum, the defendant in error, owned a farm near Nottoway Court House, Virginia. In December, 1915, he placed this farm, Blendon, containing about 120 acres, in the hands of the Realty Company of Virginia for sale. At the same time he signed a written contract of agency containing various agreements with the Realty Company. The Realty Company thereupon included this farm in its advertising matter which they distributed through the mails. In the year 1917, W. G. Dick and wife, of Ohio, having seen various advertisements of Southside Virginia, including the catalogue of the Realty Company, which at-

tracted their attention, came to this State. Stopping at Blackstone, they called at the office of the company, stating that they wished to see a farm listed in its catalogue. Mr. E. L. Denton, manager of the company, thereupon showed them a number of farms. Returning in his automobile from one of these trips, Denton, while passing the Burcum farm, late in the afternoon, pointed out to the Dicks the lines of the property, describing the house and other buildings, and, stating that it was listed with him for sale, asked if they wanted to see the property. Mrs. Dick said that they did not care to go in, that it was late, and they preferred to see the Dillemuth place. Accordingly, the party proceeded to the Dillemuth place, and stopping, looked it over, securing Mrs. Dillemuth's price on her property. After this trip, Mr. Dick did not return to see Mr. Denton about the Dillemuth or any other property, and later the realty company ascertained that Mr. Barcum had sold the "Blendon" farm to Mr. Dick. Thereupon the Realty Company brought an action of assumpsit against Burcum to recover a commission of $900 on the above sale.

The case was tried several times, resulting in hung juries. On the last trial the jury found for the defendant. The plaintiff moved to set aside this verdict, on the ground that it was contrary to the evidence, and for misdirection of the jury. This motion the court overruled. Thereupon, the plaintiff applied for and obtained a writ of error from one of the judges of this court.

The plaintiff in error makes five assignments of error, as follows:

1. The court erred in giving the instruction which was given because the same was mandatory, and required the jury to find a verdict for defendant.

2. Because the court refused to give the nine instructions, or any one of them, asked for by petitioner.

3. Because the court failed to give any instructions presenting petitioner's theory of the case.

4. Because the court overruled petitioner's motion to set aside the verdict of the jury as being contrary to the law and the evidence.

5. Because of misdirection of the jury.

[1, 2]    A trial court is not required to give instructions presenting a plaintiff's, or a defendant's, theory of a case, unless these instructions are supported by the testimony. The scintilla doctrine has not been revived in this State. It is true that this court said in *Small* v. *Virginia Ry. & P. Co.*, 125 Va. 421, 99 S. E. 525: "We are of opinion that the plaintiff was entitled to an instruction upon his theory of the case." But the court did not mean to say by this language, that merely because a plaintiff, or, for that matter, a defendant, has a theory of the case, he is thereby entitled to an instruction upon that theory. A *sine qua non* of his right to an instruction is that it is supported by some appreciable evidence.

In that very case the court said: "The statute against peremptory instructions is not to be construed * * * as reinstating the scintilla doctrine, formerly prevailing in this State * * *.

"The duty and power of deciding finally whether there is evidence sufficient to take a case to the jury must reside somewhere, and, under the law as it now prevails, this duty and power rests upon this court." 125 Va. p. 427, 99 S. E. 527, 528.

[3]    It is error to give an instruction where there is no sufficient evidence upon which to base it, as it tends to mislead the jury. *Va. Coal, etc. Co.* v. *Ison*, 114 Va. 144, 75 S. E. 782. It is not error to refuse an instruction where there is no evidence upon which it could be properly based—some material fact, which is either admitted or supported by some appreciable evidence. *Morton* v. *Southern Ry. Co.*, 112 Va. 398, 71 S. E. 561; *Richmond* v. *McCormack*, 120 Va. 553-4. 91 S. E. 767.

Hence, after a trial court has given appropriate instructions, it is not necessarily error on its part to refuse to give further instructions in support of a view, or theory, of a case which a defendant wishes to present to the jury.

In the case in judgment the court gave one instruction, which in effect was an interpretation of the contract, and refused, as appears from the record, to give any other or further instructions. Plaintiff in error complains that this instruction was peremptory, or mandatory, and therefore erroneous.

[4] It is the duty of the court to construe a deed, or contract, and, as stated in *Small's Case,* cited *supra,* 125 Va. p. 426, 99 S. E. 527, "the statute against peremptory instructions is not to be construed as applying to cases in which the verdict of the jury depends necessarily and exclusively upon a question of law, such for example as the legal effect of a deed or contract."

This brings us to the consideration of the instruction complained of, the provision of the contract relied upon, and the evidence supposed to entitle the plaintiff to recover.

The clause of the contract upon which the plaintiff in error (plaintiff below) relies, is clause 8, as follows: "Should said property be sold to anyone with whom the Realty Company of Virginia, Inc., has negotiated for the sale thereof, or to whose attention it has directly brought the property, I agree to pay to said Realty Company of Virginia, Inc., the said commission above mentioned."

The instruction given by the court is in the following terms: "The court instructs the jury that although they believe from the evidence that E. L. Denton, agent for the Realty Company of Virginia, did have a written contract as shown to the jury, and did take Mr. and Mrs. W. C. Dick by the Burcum farm in showing him farms in the county of Nottoway that he had listed for sale, and did state in driving past said farm, that there was a farm with

about 120 acres, that he had for sale, the boundary began at a hedge which was pointed out, and that it had an old colonial house, which had no two floors on the same level, and a barn with a slate roof, that he asked Mrs. Dick if she wanted to see the place, and she replied she did not, that he did not remember stating the price or the terms upon which the property could be bought; and if they believe from the evidence of Mr. Kellar and Mr. Graham, that Denton did state on passing by said farm as above stated, that the price for which said farm could be bought was $9,000, and that the said farm was subsequently sold to W. C. Dick by J. W. Burcum, and that the Realty Company of Virginia, nor its agent, E. L. Denton, did nothing more to cause or bring about the sale of said farm, they must find for the defendant."

[5]    This instruction, in substance, gives the evidence upon which the plaintiff bases his claim to recovery, and advises the jury that if there is no further evidence of activity on Denton's part, the evidence recited does not entitle the plaintiff to a verdict under the contract, and they must find for the defendant. The instruction does not limit the jury to the consideration of the evidence recited, or advise them that they cannot find a verdict for the plaintiff, if, in their judgment, there was other evidence before them which added to the evidence recited would support a verdict. Nor was counsel for the plaintiff restrained, or hindered, by this instruction from pointing out to the jury that there was such additional evidence before them, and upon the basis of such evidence plus that recited by the court, that his client was entitled to its commissions. Apparently the jury could not discover in the testimony of their own initiative, or with the aid of counsel for the plaintiff, the necessary "something more," on Denton's part, to "cause or bring about the sale of the Burcum farm, and support a recovery," since their verdict was for the defendant.

[6, 7]   It remains for us to determine whether the trial court properly construed section eight of the contract, when it announced that the acts and words of Denton as revealed in the evidence, that is to say, the activities of Denton, did not afford the plaintiff company the right to recover commissions on the sale to Dick ultimately effected by the defendant, Burcum.

The words to be construed are the following: "Should said property be sold to anyone with whom the Realty Company of Virginia, Inc., has negotiated for the sale thereof, or to whose attention it has directly brought the property, I agree to pay to said Realty Company of Virginia Inc., the said commission above mentioned."

Section nine should also be considered in this connection. This section retains a right of sale in Burcum as follows: "I reserve the right to sell, or to employ others to sell, said property without any compensation to said Realty Company of Virginia."

The plain meaning of the two sections is, that the defendnat was free to sell his property without liability to the Realty Company, unless with respect to the sale subsequently effected the latter's initial activities had proceeded to such an extent that they were really the "procuring cause" of that sale.   Hence, Burcum's inquiry of the Dicks whether they were under any obligation to the Realty Company.   But their answer in the negative would not relieve Burcum from liability, if as a matter of fact, as alleged in plaintiff in error's petition, the Realty Company was the "procuring cause" of the sale to Dick.

It appears from the evidence of Denton that on the day on which Denton took the Dicks to see the Lewis farm near Jenning's Ordinary, "he called their attention on the return trip to the Burcum place, and as they were coming into the village of Nottoway Court House, and just about to pass the Burcum place, he slowed down his car, pointed out the

lines, as to where the land began along the highway, stated
that they extended along said highway over to the Norfolk
and Western Railroad at the overhead bridge, that there
were about 120 acres in the farm; that he had it listed for
sale; that it contained an old colonial house of twelve or
fourteen rooms, no two of which were on the same floor, the
roof being covered with slate, a fishpond and certain other
buildings thereon, a large stable covered with slate; that
he did not recollect whether he stated the price or not, but
told them that it was listed with him for sale, and asked
them if they wanted to see it, and while they were passing
the property he slowed down his car to intermediate gear
and offered to drive in."

"While they were passing, Mr. Dick stated that if he
owned the place he would cut the hedge from around it.
Upon asking whether they wanted to see the property, Mrs.
Dick said no, that she preferred to see the Dillemuth place,
formerly owned by Governor Mann, and as it was late in
the afternoon, and they had only time enough to see one
place, they would look at that."

The party thereupon proceeded to the Dillemuth place,
looked it over, secured Mrs. Dillemuth's price on same, and
"agreed to return next morning and look at it further."

The witnesses, Graham and Keller, confirm the above
statements of the witness Denton. In addition, one of them
states that Denton said the price on the property was
$9,000, and the other adds that he was absolutely certain
that Mr. and Mrs. Dick heard what Mr. Denton said to
them.

The above was the sole interview between the Dicks and
Denton relating to the "Blendon" property. Indeed he did
not see them again in reference to any other property, for
they did not return the next morning to look at the Dille-
muth place. If the above recited occurrences do not sup-
port the Realty Company's claim for commissions, then

there is nothing further in the case upon which it can be based. Mr. and Mrs. Dick, after looking at the Dillemuth place with Mr. Denton, went to Blackstone to spend the night, stopping with a Mrs. Chalkley. Next morning their landlady called their attention to the Burcum farm, described it as a beautiful place, and asked Mr. Primm, a son-in-law of Mr. Burcum, who was at the breakfast table, if it was for sale, and if he could take the visitors to see it. Mr. Primm replied that he could, if he was able to secure some one to take his place at the postoffice. He did effect this arrangement and took Mr. and Mrs. Dick to Nottoway Court House to look at "Blendon." The parties also saw Mr. Burcum on this trip with Primm. No sale was effected at this time, but in February, 1918, Mr. Dick returned, and on February 19 matters were closed, and a deed to the property was made on March 18, 1918. The price paid by Dick was $9,000.

[8] Upon the above state of facts, was the Realty Company the "procuring cause" of the sale finally effected by Burcum? Did Denton's remarks and acts so interest the Dicks that they were moved thereby to prosecute further inquiries into the merits and desirability of "Blendon" as. a home? Was their interest in that specific property so quickened by Denton's acts and Denton's words that, fairly speaking, those acts and words caused Dick's return to look over the same, thereby setting in motion the negotiations which culminated in a purchase? Looking to Mr. Denton's testimony it does not appear that either what he said or did in relation to "Blendon" aroused the slightest interest in Mr. Dick or his wife. Mr. Dick's sole comment on passing was to say that if he owned the "Blendon" property he would cut down the hedge, while Mrs. Dick's response to Mr. Denton's inquiry as to whether they wanted to see the property was, that they did not care to do so, and preferred to look over the Dillemuth place. It is difficult to find in

these responses to the brief comments of Denton on the "Blendon" property, the evidence of an interest which was to culminate in a later purchase. If the parties were not aroused to an interest in "Blendon" by the activities of Denton, but by the independent activities of others, then Burcum had a right to negotiate a sale of his property without liability for commissions to the Realty Company. We do not find in the evidence that the Realty Company negotiated with the Dicks for the sale of "Blendon," or that what was said by Denton brought their attention directly to the property in the sense contemplated by the contract and necessary to fix responsibility for commissions upon the owner, Burcum. The quickened interest of the Dicks in "Blendon" was evidently aroused by the glowing comments on its beauty by Mrs. Chalkley, who enlisted the aid of Mr. Primm to show the place in detail to the visitors from Ohio. It was the interest that her comments aroused, followed by the trip to "Blendon" with Primm, that led to the negotiations with Burcum, and the ultimate purchase. Unless Denton's acts were the "procuring cause" of the ultimate sale, and we do not consider that they were, then Burcum had the right to sell to Mr. Dick "without any compensation to the Realty Company."

We do not find any error in the instruction given by the court, or in its refusal to give further instructions. The verdict of the jury was proper and should not have been set aside.

We affirm the judgment of the trial court.

*Affirmed.*

SIMS, J., dissenting.

I concur in what is said in the majority opinion in regard to the duty of the court to construe the contract; and also in the holding that the instruction given by the court is not

*per se* erroneous, for the reason that it is such a peremptory instruction as is forbidden by statute. There would be no error in the instruction if it was not upon a partial view of the material evidence—i. e., if the evidence therein stated, together with the other evidence thereby left to the consideration of the jury, embraced all of the material evidence in the case bearing on the issue. But did the instruction do this? I think it did not.

It is true that under the instruction the jury were left free to consider any other evidence there may have been in the case of other action of the Realty Company or its agent, Denton, tending to cause or bring about the sale to Dick, besides that set forth in the instruction. But that is immaterial as there was in fact no such other action, and no evidence was introduced by the Realty Company tending to show any such further action, and it was not claimed in the court below, nor is it claimed before us by the Realty Company that there was any such further action. There was no such issue made in the case. The instruction was, therefore, as I think, misleading for the very reason that it did instruct the jury, in substance, that they were free to consider such other evidence. It erroneously diverted the attention of the jury to an issue not in the case, and as to which there was no evidence before them. This was in itself error.

The issue in the case was whether what the Realty Company did prior to the occasion when Denton took the parties to the farm, and on that occasion, "directly brought the" (Burcum) "property * * * to (the) attention" of Dick.

The instruction in question, in effect, stated to the jury that they could not, upon that issue, consider any other evidence than that set forth and alluded to in the instruction, and in so doing the instruction excluded from the consideration of the jury the following evidence for the Realty Company, viz:

1. The evidence in the case tending to show that it was a fact, and that Dick at least realized it to be a fact, that prior to the time the sale from Burcum directly to the latter was negotiated, the Realty Company had directly brought the Burcum property to the attention of Dick, and that Dick then knew (and if he told Burcum the truth at the time of the negotiation of the sale, that Burcum also then knew) that the Realty Company was entitled, under the contract of Burcum with it, to the commissions in question in this case.

There is of such evidence the following in the record, viz:

(a) The testimony of Keller "that he was absolutely certain that Mr. and Mrs. Dick heard what Mr. Denton said to them." (Record, p. 31.)

(b) The direct testimony of Denton to the effect that his action, which is set forth in the instruction, in fact called the attention of Dick and wife to the Burcum place. (Record, p. 22.)

(c) The further testimony of Denton as follows: "The next morning * * * Mr. Dick came by to see him and said he was going to Nottoway to look at a farm containing about 120 acres; that witness told him 'that must be the Burcum place with the hedge around it,' and Mr. Dick agreed it must be." (Record, p. 22.)

(d) The testimony of Denton that when Dick's attention was called to the hedge the evening before, "Mr. Dick stated that if he owned the place he would cut the hedge down from around it." (Record, p. 22.)

(e) The letter of Mr. and Mrs. Dick, of date October 16, 1917, to Denton, in which they say that before leaving Virginia "we did not see what we wanted." (Record, p. 28.)

(f) The other testimony of defendant, Burcum, introduced in the attempt to show that the sale to Dick was not made until February, 1918; whereas, it appears from the admissions of both Mr. and Mrs. Dick, witnesses for the

defendant, made on cross-examination, that the sale was in truth practically agreed upon at the time of the negotiation aforesaid, on their visit to the Burcum farm, when taken there by the son-in-law of Burcum, which was prior to October 16, 1917.

(g) The admission of Dick, on cross-examination, that on the day last named "Mr. Burcum told him that the farm was listed at $10,000, but that he, Burcum, had saved the witness $1,000; that Burcum asked him if Denton had not shown him properties in the county, and he told him he had, and that Burcum told him to keep it from Denton, that it would cost him $1,000 if Denton found it out, and not to let Denton know anything about it; that he did keep it away from Mr. Denton, and tried not to let him know anything about it, but that Denton found it out anyway." (Record, p. 35.)

(h) The admission of Mrs. Dick, on cross-examination, "that when they were talking to Mr. Burcum about buying the property, he told them it was listed with real estate agents for $10,000; that if they bought direct from him it would save them $1,000, and told Mr. Dick not to let Mr. Denton know anything about their transaction, that if he did it would cost $1,000."

(i) The statement of Burcum in his testimony in his own behalf, on examination-in-chief, that "he did not recollect telling Mr. and Mrs. Dick not to tell Mr. Denton about his negotiations with them * * * Mr. Dick * * * entered into no negotiations while here" (in 1917); "that they had not sold their farm in Ohio; in February, Mr. Dick came back * * *; that he wanted an abstract, etc.; that everything was closed up on the 19th of February." That on cross-examination this witness "denied telling Mr. and Mrs. Dick to keep the matter secret from Mr. Denton."

(j) Other conflicts between the testimony of Denton and that of Dick and Burcum. (Record, p. 34, 35, 36, 24.)

The evidence thus excluded from the consideration of the jury raised the question of veracity, certainly between Denton, witness for plaintiff, and Mr. and Mrs. Dick, witnesses for the defendant, Burcum, if not between Denton and Burcum also, and raises such question upon the very issue in the case aforesaid. In the light of such evidence, the decision upon such issue depended upon the credibility to be given to the testimony of Mr. and Mrs. Dick and of Burcum. Thus was presented a question which was for the jury and not for the court, and a vitally material question. The court by the instruction under consideration took that question wholly away from the jury and itself decided it. This was a further error, and, as I think, plainly reversible error.