# Richmond.

## J. C. HARRIS v. COMMONWEALTH.

November 16, 1922.

1. ASSAULT AND BATTERY—*Malicious Shooting—Homicide—What Constitutes Malicious Shooting with Intent to Kill.*—Whether a person indicted under section 4402 of the Code of 1919 is guilty of malicious shooting with intent to kill depends upon whether, if he had killed the person at whom he shot, instead of only wounding him, he would have been guilty of murder, or would have been only guilty of manslaughter, or homicide in self-defense. If he would have been guilty of murder had he killed the person at·whom he shot, he is guilty of malicious shooting with intent to kill; if he would only have been guilty of manslaughter, then he is guilty of unlawful shooting; and, if he shot in self-defense, he is not guilty of any offense.

2. HOMICIDE — *Murder or Manslaughter — Malice—Provocation—Passion — Words as Provocation.*—Every unlawful homicide must be murder or manslaughter. Whether it is murder or manslaughter depends entirely upon whether or not the act was done with malice, express or implied. A reasonable provocation is always necessary to reduce a felonious homicide, committed upon sudden provocation, from murder to manslaughter. Words alone, however insulting or contemptuous, are never a sufficient provocation, where a deadly weapon is used, to have that effect. In order to so reduce the offense, it is necessary that there should be a reasonable provocation which produces a sudden passion, under the influence of which the offense is committed. Provocation without passion, or passion without provocation, will not do; but both must concur to reduce the offense to the grade of manslaughter.

3. ASSAULT AND BATTERY—*Malicious Shooting—Malice.*—In a prosecution for malicious shooting, where it was shown that the shooting was unlawful and without reasonable provocation, and the evidence failed to disclose any circumstances of palliation, the jury were compelled to find, as a matter of fact, that the shooting was done with malice.

4. INSTRUCTIONS—*Party's Right to Instruction upon his Theory of the Case—Evidence to Support Instructions.*—While it is true that a plaintiff or defendant is entitled to an instruction upon his theory of the case, this does not mean that merely because a defendant has a theory of his case he is thereby entitled to an instruction upon that theory.

It is only when such an instruction is supported by some appreciable evidence that the rule can be invoked, that the party is entitled to an instruction upon his theory of the case.

5. INSTRUCTIONS—*Party's Right to Instruction upon his Theory of the Case—Evidence to Support Instructions—Case at Bar.*—In the instant case, a prosecution for malicious shooting, defendant objected that in declining to give instructions asked by him on provocation, self-defense, and his intoxication at the time of the shooting, the court refused to present to the jury the law covering accused's theory of the case.

*Held:* That, as the record failed to disclose any evidence upon which the instructions could have been based, their refusal was not error.

6. APPEAL AND ERROR—*Error in Instructions—Where the Jury could not have Found a Different Verdict.*—Where, as in the instant case, the Supreme Court of Appeals can see from the entire record that the jury could not properly have returned a different verdict, it is unnecessary for the court to consider the propriety of the rulings of the trial court in giving and refusing instructions, and it will not, under such circumstances, reverse the judgment and set aside the verdict.

Error to a judgment of the Circuit Court of Nelson county.

*Affirmed.*

The opinion states the case.

*J. T. Coleman, Jr., L. G. Tucker* and *Jno. D. Easley,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

J. C. Harris obtained this writ of error to a judgment sentencing him to the penitentiary for three years for maliciously shooting McCue Quick.

The only assignment of error relied on is the action of the trial court in granting instructions Nos. 1 and 2 offered by the Commonwealth, and in refusing to give

instructions "A," "B" and "C" requested by the accused. The following are all the instructions given:

"1. The court instructs the jury that on a charge of a malicious shooting malice is presumed from the fact of shooting with a deadly weapon, and when the shooting is proved, and is unaccompanied by circumstances of palliation, the burden of disproving malice is thrown upon the accused.

"2. And the court further instructs the jury that to constitute a malicious shooting, it is not necessary that malice should exist any particular length of time prior to the shooting, it is only necessary that such intention should come into existence for the first time at the time of the shooting, or any time previous."

"D. The court instructs the jury that the law presumes every person charged with crime to be innocent until his guilt is established by the Commonwealth beyond a reasonable doubt, and this presumption of innocence goes with the prisoner through the entire case, and applies to every stage thereof; and they are instructed that although they might have believed, when the Commonwealth closed its case, that the prisoner at the bar was guilty beyond a reasonable doubt, yet, if after having heard the evidence introduced on behalf of the prisoner, they have a reasonable doubt as to any fact or circumstances essential to prove the charge made against him in the indictment, it is their duty to give the prisoner the benefit of the doubt and find him not guilty."

The following are the instructions tendered by the accused and refused by the court:

"A. The court instructs the jury that if they believe from the evidence that Quick provoked the defendant, or brought on the difficulty, and thereby caused the defendant to shoot him in the heat of passion, then the

jury cannot convict the accused of anything more than common assault.''

"B. The court instructs the jury that if they believe from the evidence that the defendant reasonably apprehended that Quick would do him bodily harm, then you are instructed that the defendant had the right to repel such assault or apprehension of bodily harm by all the force he deemed necessary, and that he was not compelled to retreat from said Quick, but might, in his turn, become the assailant, inflicting bodily wounds until his person was out of danger.''

"C. The court instructs the jury that even though they may believe from the evidence that the accused shot and wounded Quick without just cause, but that at the time of said shooting the accused was so intoxicated as to be incapable of having or entertaining malice towards the said Quick, or an intention to wound the said Quick, they cannot find him guilty of malicious or unlawful shooting.''

McCue Quick was a tenant on a farm owned by the accused in Nelson county, and resided thereon in a house with another tenant, Robert Goolesby, who was Quick's father-in-law.   The relations between Quick and the accused had always been very friendly.   On the day of the shooting the accused, who lived on a nearby farm, visited the Quick home several times, enquiring for Robert Goolesby.   Quick was away in the forenoon. When he returned between one and two o'clock he found the accused in his home and invited him to dinner.   The accused accepted his hospitality and after dinner, Quick, at the request of the accused, played a violin, while one of the ladies of the family played the guitar and sang, for his entertainment.

Quick and the accused went into Mrs. Goolesby's cookroom where they engaged in friendly conversation,

while Quick was drying some tobacco by the stove. Mrs. Goolesby came in and on being asked by the accused where her husband was, stated he was at the ball game.    Tenant Goolesby had not finished planting his corn and the accused said to his wife: "Tell the old man when he comes back he had better leave here before I do something desperate." Fannie Goolesby, the sister-in-law of Quick and the daughter of Mr. Goolesby, came in the room and said to the accused: Mr. Harris, you wait and tell papa that; if you got anything to say, say it to him and not to mamma." The accused replied: "You damn little coxy b—, what have you to do with it?" Quick remonstrated with the accused about the language used by him to Miss Goolesby, saying: "Mr. Harris, you ought not to talk to a child that way." The moment these words were spoken the accused, who was seated behind Quick, shot at Quick three times, the first shot passing through and scorching the hair on his head, the second, fired just as he jumped up to leave the room, striking him in the back and coming out at his neck, and the third, fired up the steps, as Quick passed into another room, missed him and struck a little child. Quick did not have a knife in his hand at the time he was shot.    After the shooting the accused walked out of the house and went home without offering any assistance to either of the persons he had wounded.    Quick was taken to the hospital and remained there three weeks.

The evidence introduced on behalf of the Commonwealth also tended to show that the accused was not under the influence of liquor the day of the shooting, and that neither Quick nor any member of the Goolesby family furnished him any intoxicating liquor.    The accused testified that he went to the Goolesby farm to see a colored man, and not finding him came by the

Goolesby home where he purchased for one dollar a half-gallon jar of a concoction known as Old Hen, and drank freely of it. His account of the shooting does not differ materially from that of the Commonwealth's witnesses, above related. He testified that he and Quick had drunk about a quart of Old Hen; that he put the jar in a bag and placed the bag at the door; that some one came in and said the children had turned his whiskey over and he said, "Good God, don't turn my whiskey over;" that he and Quick were talking about a Mr. Lynch bringing a harrow across a piece of land, and kept arguing about it; and that all at once Quick said he didn't give a damn for any son-of-a-b— with a pistol against his knife; that accused had his pistol in his front pocket and Quick had his knife, unopened, in his hand, when he made this remark; and that before he could open his knife he, the accused, shot him three times, the third shot being fired because he thought Quick was going to get a gun.

The foregoing are the material facts in the case.

The indictment was drawn under section 4402, Code 1919, and charged the accused with feloniously and maliciously shooting McCue Quick, with intent to maim, disfigure, disable and kill.

[1] Whether a person indicted under this statute is guilty of malicious shooting, with intent to kill, depends upon whether, if he had killed the person at whom he shot, instead of only wounding him, he would have been guilty of murder, or would have been only guilty of manslaughter, or homicide in self-defense.

If, in the instant case, the accused would have been guilty of murder had he killed Quick, then he is guilty of malicious shooting with the intent to kill, of which he was convicted; if he would have been guilty of manslaughter only, then he is guilty of unlawful shooting;

and if he shot in the proper defense of himself he is not guilty of any offense.

[2] Every unlawful homicide must be murder or manslaughter. Whether it is murder or manslaughter depends entirely upon whether or not the act was done with malice, express or implied. A reasonable provocation is always necessary to reduce a felonious homicide, committed upon sudden provocation, from murder to manslaughter. Words alone, however insulting or contemptuous, are never a sufficient provocation, where a deadly weapon is used, to have that effect. In order to so reduce the offense, it is necessary that there should be a reasonable provocation which produces a sudden passion, under the influence of which the offense is committed. Provocation without passion, or passion without provocation, will not do; but both must concur to reduce the offense to the grade of manslaughter. *Read* v. *Commonwealth*, 22 Gratt. (63 Va.) 937.

The accused's own statement of how the shooting occurred fails to disclose that Quick did any act which could be construed to constitute a reasonable provocation for the shooting; and the language used by him could not constitute a sufficient provocation. If Quick made the remark about a son-of-a-b— with a pistol against his knife, *supra*, as claimed by the accused, it does not clearly appear that he had reference to the accused, as accused's pistol was then in his pocket and had not been mentioned.

[3] The shooting being unlawful and without reasonable provocation, and the evidence failing to disclose any circumstances of palliation, the jury were compelled to find, as a matter of fact, that it was done with malice.

The accused complains that the court by its refusal to give instructions "A," "B" and "C" declined thereby

to present to the jury the law covering his theory of the case.

[4-6] It is true this court has said a plaintiff, or defendant, is entitled to an instruction upon his theory of the case. *Small* v. *Va. Ry. & P. Co.*, 125 Va. 421, 99 S. E. 525. But by that language the court did not mean to say, merely because a defendant has a theory of his case, he is thereby entitled to an instruction upon that theory. Only when such an instruction is supported by some appreciable evidence can this rule be invoked. *Realty Co.* v. *Burcum*, 129 Va. 466, 106 S. E. 375.

A careful and painstaking examination of the record in the instant case fails to disclose any evidence upon which instructions "A," "B" and "C" could be properly based, and we shall refuse to consider further the assignment of error as to granting and refusing instructions. Where, as in the instant case, the court can see from the entire record that the jury could not properly have returned a different verdict, it is unnecessary for this court to consider the propriety of the rulings of the trial court in giving and refusing instructions, and it will not, under such circumstances, reverse the judgment and set aside the verdict. *Winfree* v. *Bank*, 97 Va. 83, 33 S. E. 375; Burks' Pl. & Pr., sec. 267; *Neal & Binford* v. *Taylor*, 106 Va. 651, 56 S. E. 590; *Fields* v. *Virginian Ry. Co.*, 114 Va. 558, 77 S. E. 501; *Adams Express Co.* v. *Allendale*, 116 Va. 1, 81 S. E. 42, Ann. Cas. 1916-D, 894; *Wood* v. *Jefferies*, 117 Va. 193, 83 S. E. 1074; *Straus* v. *Fahed*, 117 Va. 633, 85 S. E. 969; *Standard, etc., Co.* v. *Monroe*, 125 Va. 442, 99 S. E. 589.

For the reasons stated, the judgment will be affirmed.

*Affirmed.*