COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Overton
Argued at Chesapeake, Virginia


DERRICK EDWARD HELMICK
                                      OPINION BY
v.   Record No. 1430-01-1   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Patricia L. West, Judge

            Richard C. Clark, Senior Assistant Public
            Defender, for appellant.

            Eugene Murphy, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     Derrick Edward Helmick (appellant) appeals his conviction

by a jury of first degree murder in violation of Code § 18.2-32.

On appeal, he contends the trial court erred in failing to (1)

declare a mistrial to allow his counsel to withdraw and testify

on his behalf, (2) exclude testimony from a witness of

appellant's harassment of that witness, (3) instruct the jury on

assault and battery, and (4) instruct the jury on accident as a

defense.  Finding no error, we affirm.

                        I.  BACKGROUND

     Under familiar principles of appellate review, we examine the

evidence in the light most favorable to the Commonwealth, the

prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  However, "[w]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction."  Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002) (citing Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991)).

So viewed, the evidence established that on May 30, 2000 appellant was caring for his nine-week-old child, Dawn Marie (the child), at the home of Darrell and Lisa Ogden, his sister and brother-in-law.  While in appellant's care, the child suffered serious injuries and died in the hospital two days later.

Appellant gave several versions of the manner the child was injured.  He initially told Lisa Ogden that as he put the child to bed, she "spit up."  While he was holding her with one arm and attempting to change her clothes, he dropped her.  At the hospital, appellant told a social worker that after the child threw up, he cleaned her and noticed she was having difficulty breathing and dropped her three and one-half feet onto the floor.  He also said that a bruise on the child's head was "caused when he put her in the baby swing."

Later, at the hospital, appellant told Detective J.R. Pickell (Pickell) that the child had been in her crib when he found her and that she had thrown up. He placed both hands under her, but when he turned to put her on the bed behind him, she moved and fell out of his hands onto the floor. When he put the child on the bed, she went limp and stopped breathing. The police found the floor of the house to be carpeted with a padding underneath.

On the second day the child was in the hospital and still on life support, appellant telephoned Vicki Brewer (Brewer), a woman in Ohio he recently met on the internet. He told her that he had "propped [the child] on the couch giving her a bottle," and she had rolled off the couch. When Brewer said, "nine week old babies can't roll," he stated, "[w]ell, she did." Shortly thereafter, appellant put a note in Darrell Ogden's bible stating that he relinquished sole guardianship of the child to his mother and left to meet Brewer. Appellant remained with Brewer in Ohio for six days until she told him to leave. He refused to leave and "showed up at [Brewer's] work to harass [her]" and "wouldn't go away." Brewer called the police, and appellant was arrested.

While incarcerated in Ohio, Pickell met with him again. Appellant gave a different version of how the child sustained her injuries. He stated he picked the child up, dropped her

onto the floor and she stopped breathing.  He panicked, and when he picked her up to take her to the kitchen to throw water on her face, she fell out of his arms.  Pickell stated that he did not believe appellant's story, and appellant admitted that when the child had "spit up," he picked her up and shook her.  While he was shaking her, he let go and dropped her.  Appellant also admitted it was possible that the child hit her head on the side of the crib.

In a later videotaped statement, appellant admitted shaking the child out of frustration and dropping her.  He stated, "I grew up in an anger-filled family.  And I guess it just completely built up inside of me until it exploded."

The medical examiner, Dr. Elizabeth Kinnison (Kinnison), found that the child had "brain damage enough to cause death." The cause of death was blunt force injuries which required an "extreme" amount of force.  She opined that the amount of force necessary to cause the child's injuries would not be consistent with a fall from an adult level height.  Kinnison also noted that the nine-week-old child had suffered an earlier injury to her head.

## II.  MOTION TO WITHDRAW

At trial, during the testimony of Darrell Ogden, appellant's counsel moved for a mistrial because he thought it necessary for him to withdraw as counsel and testify on

appellant's behalf. The basis for his motion was that Lisa and Darrell Ogden told him they wanted appellant to give them his car and they were upset when he refused to do so. Thus, it was necessary for him to withdraw and testify about their "bias." Counsel later admitted in his proffer of proposed testimony that he would only be able to show that Lisa Ogden was upset. Lisa Ogden testified and during cross-examination stated that she thought the car should be given to her mother because she gave appellant the money to buy it. She did not deny that she was upset, but did not remember making that statement to counsel.

The trial court stated: "Mrs. Ogden did not deny that she was upset about [appellant's] failure to sign the car over to them. So you're not precluded from making that [bias] argument to the jury . . . . Your testimony is not necessary and I am not going to declare a mistrial in this matter." We agree with this analysis.

"[A] decision to permit counsel to withdraw mid-trial rests with the sound discretion of the trial court." Fisher v. Commonwealth, 26 Va. App. 788, 794, 497 S.E.2d 162, 165 (1998).

In the instant case, the trial court did not abuse its discretion by refusing to allow appellant's counsel to withdraw to become a witness in the case. The testimony proffered by

counsel did not concern a disputed issue, was not material, and was not timely made.[1]

It was undisputed that the Ogdens wished to have appellant sign his ten-year-old Ford Taurus over to them and were unhappy when he failed to do so.  Appellant's counsel's proffer of his testimony added nothing.  Additionally, the proffered testimony was collateral to any issue in the murder case.

> A fact is wholly collateral to the main issue if the fact cannot be used in evidence for any purpose other than for contradiction.  Evidence of collateral facts, from which no fair inferences can be drawn tending to throw light upon the particular fact under investigation, is properly excluded for the reason that such evidence tends to draw the minds of the jury away from the point in issue, to excite prejudice and mislead them.

Seilheimer v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982) (emphasis removed) (internal citations omitted).  Lisa Ogden gave no direct testimony about the death of her niece.

---

[1] Appellant contends Supreme Court Rule 3.7, Part 6 § 11, mandates that the trial court allow his withdrawal.  This contention is without merit.  This Court and the Supreme Court of Virginia have questioned the propriety of equating the force of a disciplinary rule with that of decisional or statutory law in state court proceedings.  See Fisher, 26 Va. App. at 794, 497 S.E.2d at 165; see also Shuttleworth, Ruloff, and Giordano, P.C. v. Nutter, 254 Va. 494, 498, 493 S.E.2d 364, 366 (1997).  Notwithstanding this concern, however, a decision to permit counsel to withdraw mid-trial rests within the sound discretion of the trial court.

Indeed, her factual recitation followed appellant's most exculpatory version of the events.

Lastly, counsel was aware of the potential "bias" issue before trial and delayed addressing it until mid-trial.  The trial court found as follows:  "It was always a bias issue.  If you are truly saying that these folks have a reason to lie against your client because he didn't sign over a car to them, then this was always an issue, not because it was brought up today."  See Terrell v. Commonwealth, 12 Va. App. 285, 403 S.E.2d 387 (1991) (motion to withdraw filed two days before trial deemed untimely).  The trial court did not abuse its discretion in refusing to allow counsel to withdraw.

### III.  VICKI BREWER'S TESTIMONY

Appellant next contends the trial court erred in allowing Brewer to testify that appellant harassed her at her workplace because this incident was probative of no issue in the murder case and was prejudicial.  We agree the trial court erred in admitting this portion of Brewer's testimony, but find the error to be harmless.

"[A] non-constitutional error is harmless 'when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'"  Lavinder v. Commonwealth, 12

Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (en banc)

(quoting Code § 8.01-678) (emphasis removed).

> Consequently . . . a criminal conviction
> must be reversed unless "it plainly appears
> from the record and the evidence given at
> the trial that" the error did not affect the
> verdict.  An error does not affect a verdict
> if a reviewing court can conclude . . .
> that, had the error not occurred, the
> verdict would have been the same.

Id. at 1006, 407 S.E.2d at 911; see Galbraith v. Commonwealth,

18 Va. App. 734, 743-44, 446 S.E.2d 633, 639 (1994).

> Factors . . . important to the harmless
> error inquiry are the importance of the
> witness' testimony in the prosecution's
> case, whether the testimony was cumulative,
> the presence or absence of evidence
> corroborating or contradicting the testimony
> of a witness on material points, the extent
> of cross-examination otherwise permitted
> and . . . the overall strength of the
> prosecution's case.

Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635,

641-42 (1990) (en banc) (internal citations omitted).  If it

"plainly appears" that the Commonwealth's case was no "less

persuasive" if the disputed evidence had been excluded, the

error is harmless.  Galbraith, 18 Va. App. at 744, 446 S.E.2d at

639.

    Brewer testified that appellant came to her home shortly

after the child was injured and stayed with her for several

days.  She asked him to leave and in response to a

Commonwealth's question, stated:  "Well, I thought everything

would be alright [sic] until he - you know, he showed up at my work to harass me." He came to see her twice on her work breaks and when he would not leave, she called the police.

Although Brewer's testimony describing her encounter with appellant at her workplace was irrelevant, the nature of the testimony was limited and not inflammatory, and its effect on the jury was minimal at best. Other evidence in the case provided overwhelming proof of appellant's guilt. Appellant confessed that he "exploded," shook and dropped his nine-week-old child. He left his child in the hospital on life support to visit Brewer in Ohio and showed no concern for the child's welfare while there. The mere reference to an unspecified incident of harassment was harmless under the facts of this case.

IV. REFUSAL TO GIVE AN ASSAULT AND BATTERY INSTRUCTION

Appellant next contends the trial court erred by failing to give an instruction on assault and battery. He argues that his statement, that he only intended a slight bodily harm when he shook the child, supports this theory. We disagree.

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Vaughn, 263 Va. at 33, 557 S.E.2d at 221 (citing Blondel, 241 Va. at 469, 403 S.E.2d at 341).

"If the evidence is sufficient to support 'a conviction of the crime charged, and there is no independent evidence warranting a conviction [of the lesser-included offense], an instruction on the lesser-included offense need not be given.'" Id. at 36, 557 S.E.2d at 222-23 (quoting Guss v. Commonwealth, 217 Va. 13, 14, 225 S.E.2d 196, 197 (1976)).

"More than a scintilla of evidence is necessary to support a lesser-included offense instruction requested by the defendant." Leal v. Commonwealth, 37 Va. App. 525, 533, 559 S.E.2d 874, 878 (2002) (citing Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998)).

In the instant case, no credible evidence supports appellant's assault and battery instruction request. He admitted he shook the nine-week-old child while in a rage. Even assuming he killed his child inadvertently, these actions would properly be classified as manslaughter because a death resulted.

When the child died as the result of appellant's "assault and battery," the death elevated the crime to at least involuntary manslaughter. Thus, the trial court did not err in failing to give an assault and battery instruction.

V. REFUSAL TO GIVE AN ACCIDENT INSTRUCTION

Lastly, appellant contends the trial court erred in refusing to instruct the jury that the burden was on the Commonwealth to prove the killing was not accidental.

Appellant's contentions are without merit as the jury was properly instructed on the Commonwealth's burden of proof.

"[J]ury instructions are only proper if supported by the evidence, and . . . more than a scintilla of evidence is necessary to support [an] . . . instruction requested by the defendant." Donkor, 256 Va. at 445, 507 S.E.2d at 76.

"[The Supreme Court has] previously held that, although the jury's ability to reject evidence will support an acquittal, the ability to reject evidence does not supply the affirmative evidence necessary to support a jury instruction." Vaughn, 263 Va. at 37, 557 S.E.2d at 223 (citing Donkor, 256 Va. at 445, 507 S.E.2d at 76).

"Where the evidence warrants, an accused is entitled to an instruction presenting his theory of accidental killing as a defense." Martin v. Commonwealth, 218 Va. 4, 6, 235 S.E.2d 304, 305 (1977) (citing Jones v. Commonwealth, 196 Va. 10, 15, 82 S.E.2d 482, 485 (1954)).

In the instant case, no credible evidence warranted an instruction on accidental killing.

The trial court found

> the evidence was presented to the jury, and it was uncontradicted, that he repudiated his original statements that this was an accident totally; and his final statement was that he shook the child and then dropped the child. The killing may have been accidental, and I think you've presented

- 11 -

> sufficient evidence to make that argument that he didn't intend for the child to die; but as far as the child rolling off the couch and hitting its head and that's the accident that caused this death, I don't think that the evidence is in; and I don't think the jury could credibly find that.

In addition to appellant's statements, Kinnison, the medical examiner, testified that the child died from blunt force injuries which would have required an "extreme" amount of force. She stated that the amount of force necessary to cause the injuries would not be consistent with a fall from an adult level height. No evidence, including appellant's statements, his actions while the child was in the hospital and the physical findings of the medical examiner, supplies any basis for a theory of accidental death. Accordingly, in the absence of any credible evidence to support an instruction on accident, we affirm the trial court's refusal of the instruction.

For the foregoing reasons, we affirm.

Affirmed.