COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


JERRELL CORTEZ EDWARDS

v.       Record No. 0954-14-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY GRACE O'BRIEN
DECEMBER 22, 2015


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Richard Clark, Senior Assistant Public Defender, for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury convicted Jerrell Cortez Edwards ("appellant") of second-degree felony murder, in

violation of Code § 18.2-33, and felony child abuse or neglect, in violation of Code

§ 18.2-371.1(B). The victim was the two-year-old son of appellant's girlfriend. Appellant was

sentenced to twenty-five years in the state penitentiary on the murder charge and five years in the

penitentiary on the child abuse charge. On appeal, appellant alleges the following error: "The

trial court erred in not granting either jury instructionn [sic] 1A or 1B which contained lesser

included offenses because there was credible evidence to support such an instruction beyond a

scintilla of evidence." We disagree and affirm the trial court's ruling.

I.  BACKGROUND

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the

evidence in the light most favorable to the proponent of the instruction." Commonwealth v.

Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002). So viewed, the evidence established that

Laquita Lewis, the mother of the two-year-old victim, J.L., and another five-week-old son, was

living with appellant on April 5, 2012. Approximately 7:20 p.m. that evening, she left the children in appellant's care while she attended a class. According to Lewis, J.L. appeared healthy and uninjured at the time she left the residence.

Appellant texted Lewis during her class. He told her that J.L. was out of diapers and that the child had cut his lip while appellant was changing his diaper. Lewis stopped to buy diapers after class and returned home just before 10:00 p.m. Upon her arrival, she found appellant in the child's room, attempting to perform CPR. J.L. was unresponsive. Lewis saw appellant slap J.L.'s face "a couple of times trying to get him to wake up" and saw him attempting chest compressions. He told Lewis "I don't know [what happened]. I just found him like this."

Lewis called 911, and emergency personnel responded approximately seven minutes later. The EMTs who responded noted that the victim's abdomen was distended. They had difficulty establishing an airway for the child, who was not breathing and had no heartbeat. J.L. was taken to the hospital, where he was pronounced dead.

A police officer initially questioned appellant while emergency personnel were attempting to treat the child at the residence. Appellant told the officer that J.L. had been "fussy" that evening, so around 7:30 p.m. he gave the child some juice and laid him down in bed "to put him to sleep to help calm him down." He told the officer that about two hours later, when he went to check on J.L., he noticed that the child had vomit on the side of his mouth and was not breathing. According to appellant, at that point he "started trying to perform CPR" on the child.

When Lewis returned from the hospital after her child's death, she noticed that the bathtub was about one-quarter filled with water. A detective arrived at the apartment and questioned appellant further. Appellant told the detective that he had three shots of vodka at about 6:00 p.m. that evening. He said that J.L. had a temper tantrum when Lewis left for school. He needed to change J.L.'s diaper and had to physically hold the child down, with his hand on

the child's chest. While he was doing so, the child flailed about, and hit his mouth on appellant's watch. Appellant said that he took the child to the bathroom to clean the blood from his mouth and then left J.L. in his room with a bottle of water. Appellant went into another room where he had a forty-five-minute video chat with an ex-girlfriend. He ended the conversation just before Lewis was due to come home and checked on the victim. At that time he noticed that the victim was unresponsive and had vomit on his shirt.

At trial, Dr. Jeffrey Gofton, a medical examiner in the Office of the Chief Medical Examiner in Norfolk, testified that he performed an autopsy on J.L. on April 6, 2012. His examination revealed that the child had multiple external injuries to the head that showed signs of healing. The doctor also identified abrasions to the victim's lips and mouth and fresh bruising behind the child's left ear. There were a series of bruises on both sides of the victim's chest, and other internal organs, including the heart, were bruised. Both the liver and stomach had been ruptured internally. J.L.'s autopsy also showed bruising to the large bowel and a fracture line to the liver approximately two inches long and two inches deep. The doctor stated that the injuries to the liver and stomach could not have been caused by misapplied CPR. He explained that typical injuries from CPR are "along the middle [of the body] just overlying the sternum or the breastplate," and J.L.'s injuries were not in that area. The doctor opined that the cause of the child's death was blunt force trauma to the chest and the abdomen.

Dr. Michelle Clayton, a pediatrician, who was qualified as an expert in the field of child abuse, testified that she attended the autopsy and reviewed the victim's medical records. She opined that the abrasions inside J.L.'s mouth could not have been caused by contact with appellant's watch because they were too extensive. She also agreed with the medical examiner that the injuries to the victim's chest were not sustained during CPR. She noted that a significant portion of the child's circulating blood was found in his abdominal cavity and opined that the

victim had been subjected to "severe blunt force trauma of multiple body areas including multiple blows to his face, . . . multiple blows to his chest[,] and . . . severe blunt force trauma to his abdomen." She described a "large purple bruise on [J.L.'s] lower intestine and appendix" and a bruise to the large intestine and surrounding tissue. Dr. Clayton opined that none of the injuries appeared accidental, based on their severity, location, and the "absence of any reasonable accidental explanation."

Appellant testified in his defense. He told the jury that before Lewis left for class, J.L. begged her not to leave. Lewis and J.L. were in another room when appellant "heard her slap him. Then [he] heard boom, boom, and then [he] heard some hollow punches to[o] like it was the chest area." Appellant reiterated his claim that his watch hit the child's mouth while appellant was changing him. Then, to "rinse the blood out of [J.L.'s] mouth," appellant put J.L.'s head under the bathtub faucet "four to five, possibly six" times. He testified that he put the child in bed with a small bottle of water and left the room to video-chat. When he returned to the room, he found J.L. lying face up with vomit on his mouth and shirt. Appellant said that he was trained in adult CPR and that he began performing CPR on J.L. When J.L. did not respond, appellant "panicked" and "started hitting [the child] on his legs, on his chest[,] [] started tapping his sides[,] [] started pinching him trying to get him to react." Appellant further stated that "[he] was tapping his—hitting his face, . . . just trying to get a response out of [the child]." He claimed that he did not intend to hurt the victim.

At the conclusion of the evidence, the court instructed the jury on the elements of each of the charges. The court denied appellant's proffered Instructions 1A and 1B. Appellant asserts that the instructions, which defined involuntary manslaughter and assault and battery, were proper statements of law, and were warranted by the facts of the case.

- 4 -

## II. ANALYSIS

### A. Standard of Review

Granting or denying jury instructions "rest[s] in the sound discretion of the trial court." King v. Commonwealth, 64 Va. App. 580, 586, 770 S.E.2d 214, 217 (2015) (alteration in original) (quoting Cooper v. Commonwealth, 277 Va. App. 377, 381, 673 S.E.2d 185, 187 (2009)). On appeal, we consider the trial court's ruling with an abuse of discretion standard of review. Gaines v. Commonwealth, 39 Va. App. 562, 567, 574 S.E.2d 775, 778 (2003) (*en banc*). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Rhodes v. Commonwealth, 41 Va. App. 195, 200, 583 S.E.2d 773, 775 (2003) (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)).

"A trial court should instruct the jury . . . 'on all principles of law applicable to the pleadings and the evidence.'" Mouberry v. Commonwealth, 39 Va. App. 576, 582, 575 S.E.2d 567, 569 (2003) (quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)). However, while a defendant is entitled to have the jury instructed on his theory of the case, "such an instruction [must be] supported by some appreciable evidence." Harris v. Commonwealth, 134 Va. 688, 695, 114 S.E. 597, 600 (1922). In other words, the defendant's theory must be supported by "more than a scintilla of evidence." Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990). We have declined to define the term "scintilla," but instead held that it should be "'resolved on a case-by-case basis' by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 157 (1999) (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1993)).

Further, if an instruction is offered for a lesser-included offense, the evidence must "provide the necessary quantum of independent evidence" to support the instruction. Commonwealth v. Leal, 265 Va. 142, 146-47, 574 S.E.2d 285, 288 (2003). A defendant is not entitled to a lesser-included offense instruction unless a jury could "rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." Carter v. United States, 530 U.S. 255, 261 n.3 (2000) (quoting Schmuck v. United States, 489 U.S. 705, 716 n.8 (1989)).

B.  Proffered Jury Instructions were Properly Rejected

The court instructed the jury that to find appellant guilty of felony murder, it must conclude that appellant killed the victim, that the killing was accidental and contrary to appellant's intention, and that the child's death occurred while appellant was committing the felony of child abuse. Another instruction defined the elements of the second felony charge, child abuse or neglect: that appellant was responsible for the care of a child under the age of eighteen and that appellant's willful acts or omissions in the care of the child were so gross, wanton, and culpable as to demonstrate a reckless disregard for human life.

Appellant contends that the court erred in denying his proposed instructions. One proposed instruction allowed the jury to find appellant guilty of involuntary manslaughter instead of felony murder. Another proposed instruction permitted the jury to find him guilty of assault and battery if the Commonwealth did not prove all of the elements of either felony murder or involuntary manslaughter.[1] The evidence in this case did not warrant granting either of the instructions on lesser-included offenses.

---

[1] Appellant's proposed Instruction 1A stated, in pertinent part:

> If you find from the evidence that the Commonwealth has proved the first two elements of the felony homicide but not the third that the defendant was then committing the felony of child

1. Assault and Battery

A battery is the least touching of another, willfully or in anger, including touching done in the spirit of rudeness or insult.  Hinkel v. Commonwealth, 137 Va. 791, 794, 119 S.E. 53, 54 (1923).  Here, the uncontradicted medical evidence established that J.L. died as a result of

---

neglect but do find the Commonwealth proved beyond a reasonable doubt each of the following elements of that crime:
    (1) That the defendant killed J. L.; and
    (2) That the killing, although unintended, was the direct result of the unlawful performance of a lawful act, accompanied by carelessness; the performance of an unlawful, but not felonious, act, accompanied by carelessness so gross, wanton and culpable as to show a callous disregard of human life[,] . . . then you shall find the defendant guilty of involuntary manslaughter . . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt either felony murder or involuntary manslaughter but you do find beyond a reasonable doubt:
    (1) That the defendant willfully touched [J.L.] without legal excuse or justification; and
    (2) That the touching was done in an angry, rude, insulting or vengeful manner; then you shall find the defendant guilty of assault and battery . . . .

Appellant's proposed Instruction 1B stated, in pertinent part:

If you find from the evidence that the Commonwealth has proved the first two elements of the felony homicide but not the third that the defendant was then committing the felony of child neglect but do find the Commonwealth proved beyond a reasonable doubt each of the following elements of that crime:
    (1) That the defendant killed J. L.; and
    (2) That the killing, although unintended, was the direct result of the unlawful performance of a lawful act, accompanied by carelessness; the performance of an unlawful, but not felonious, act, accompanied by carelessness so gross, wanton and culpable as to show a callous disregard of human life[,] . . . then you shall find the defendant guilty of involuntary manslaughter . . . .

If you find that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of the offense of involuntary manslaughter, then you shall find the defendant not guilty.

- 7 -

multiple blunt force traumas that ruptured his internal organs and caused significant internal bleeding. These injuries occurred while the child was in the sole care of appellant and could not have been the result of an "unlawful but nonfelonious act" such as assault and battery.

Appellant asserts that his instruction should have been accepted because a jury is entitled to accept or discard any part of the testimony. Therefore, if the jury disregarded the medical testimony, the evidence would support his proffered instruction. However, the Supreme Court of Virginia has held that "although the jury's ability to reject evidence will support an acquittal, the ability to reject evidence does not supply the affirmative evidence necessary to support a jury instruction." Vaughn, 263 Va. at 37, 557 S.E.2d at 223.

In Vaughn, the defendant was indicted for malicious wounding and convicted of unlawful wounding. He asserted that the trial court erred in refusing to instruct the jury on the lesser-included offense of assault and battery. The evidence at trial established that the defendant

> shot a gun aimed in [the victim's] direction[,] [] continued firing the gun until all shells were spent and continued pulling the trigger after the gun was empty; and [the victim] was wounded by bullets from the gun, once in the foot or ankle and, in the course of turning and running from [the defendant], again in the back.

Id. at 35, 557 S.E.2d at 222. Under these facts, the Supreme Court of Virginia found that it was not error for the trial court to refuse the instruction for assault and battery. The Court held that "where the evidence of unlawful or malicious wounding warrants a conviction, more than a scintilla of evidence must show that Vaughn did not intend to maim, disfigure, disable, or kill [the victim] to support the lesser-included offense of assault and battery." Id. at 36, 557 S.E.2d at 223.

We reached a similar result in Helmick v. Commonwealth, 38 Va. App. 558, 567 S.E.2d 551 (2002). In Helmick, the defendant was convicted of first-degree murder of his

nine-week-old child, who died while in his care.  Id. at 561-62, 567 S.E.2d at 553.  The defendant gave varying accounts of how the child sustained the injuries, but eventually admitted to shaking her and dropping her while he was enraged.  Id. at 563, 567 S.E.2d at 554.  We rejected the defendant's claim that he was entitled to an instruction on assault and battery.  Id. at 561, 567 S.E.2d at 553.  He argued that his theory was supported by his statement that he "only intended a slight bodily harm" when he shook the child.  Id. at 567, 567 S.E.2d at 556.  We held that "[w]hen the child died as the result of [defendant's] 'assault and battery,' the death elevated the crime to at least involuntary manslaughter.  Thus, the trial court did not err in failing to give an assault and battery instruction."  Id.

Similarly, in the present case, there was no evidence to warrant granting an instruction on assault and battery.  Appellant stated that he never assaulted or battered the child; according to him, the child's injuries were accidental (when J.L. cut his lip on appellant's watch) or occurred as a result of appellant improperly administering CPR.  As in Helmick, however, the injuries appellant inflicted on the child were so severe that they do not support granting an instruction for assault and battery.  Nothing in the evidence warranted an instruction on assault and battery.  See Vaughn, 263 Va. at 36, 557 S.E.2d at 222 ("If this evidence alone was sufficient to support the lesser-included assault and battery instruction, such instruction would be required in every malicious or unlawful wounding case because every such case must include these underlying elements.").

### 2.  Involuntary Manslaughter

Appellant's other proffered instruction, if accepted, would have permitted the jury to find him guilty of involuntary manslaughter if it found that the Commonwealth did not prove all the elements for felony murder, but rather established that the killing was a result of an "unlawful performance of a lawful act, accompanied by carelessness or the performance of an unlawful, but

not felonious, act, accompanied by carelessness so gross, wanton and culpable as to show a callous disregard for human life." As with the assault and battery instruction, the evidence in this case did not warrant granting this instruction.

Involuntary manslaughter is defined as the accidental killing of another in the commission of an unlawful, but nonfelonious act. Albert v. Commonwealth, 181 Va. 894, 899, 27 S.E.2d 177, 179 (1943). Furthermore, while a lesser-included offense instruction should be given if there is credible evidence to support the instruction, Martin v. Commonwealth, 13 Va. App. 524, 529, 414 S.E.2d 401, 403 (1992), granting the instruction is not automatic; there must be facts in evidence that support it. See Leal, 265 Va. at 145-46, 574 S.E.2d at 287.

In the case before us, there was not a scintilla of evidence to warrant granting an involuntary manslaughter instruction. Appellant argues that the jury could have found that the child's death was an accidental killing, committed during the unlawful but nonfelonious act of assault and battery. Nothing in the evidence supports this theory. Both medical experts were unequivocal in their opinion that the injuries that caused the child's death were not accidental. Further, the evidence established that appellant pinched J.L., slapped him in the face, punched him, held his head and mouth under the bathtub faucet "five or six times," and left him unattended and bleeding internally for an extended period of time. These actions constituted far more than an assault and battery.

Indeed, the unrebutted medical testimony was that the child died as a result of blunt force trauma to the chest and abdomen. These injuries could not be the result of the "unlawful performance of a lawful act, accompanied by carelessness" or the "performance of an unlawful, but not felonious act accompanied by carelessness so gross, wanton and culpable as to show a callous disregard for human life." The abuse that the child underwent at the hands of appellant was felonious; it was not a mere assault and battery. Therefore, while the jury was free to reject

the evidence and acquit appellant of both charges, he was not entitled to have the jury instructed on the lesser-included offenses.

### 3. Craig v. Commonwealth

Appellant relies on Craig v. Commonwealth, 34 Va. App. 155, 538 S.E.2d 355 (2000), to support his position that the trial court erred in denying his proposed jury instructions. His reliance on Craig is misplaced. The issue in Craig was whether the Commonwealth could request a lesser-included instruction, or whether, as the defendant contended, instructing the jury on a lesser-included offense was solely a defense prerogative. We held that if the evidence warranted granting an instruction on a lesser-included offense, either side could request it.

In Craig, the defendant was charged with second-degree murder for the death of his five-month-old daughter. At trial, the Commonwealth presented evidence that the child died as a result of "shaken baby syndrome." Id. at 160, 538 S.E.2d at 357-58. However, both Craig, who had been caring for the child, and the child's mother testified that they had not shaken the baby. Craig stated that he had taken the child for a car ride on the day of her death and "had to stop suddenly, which first threw [the child] forward in her front-seat car seat and then jolted her back." Id. at 158, 538 S.E.2d at 356. Craig testified that the child was "sleepy" when they returned home, so he put her to bed, where she lay for several hours until the child's mother realized she was unresponsive. Id. at 158, 538 S.E.2d at 357.

At the conclusion of the evidence, the Commonwealth requested an involuntary manslaughter instruction as a lesser-included offense of second-degree murder. Id. at 160, 538 S.E.2d at 358. The trial court granted the instruction over the defendant's objection, and we affirmed the trial court's ruling. Id. In so ruling, we found that under the facts of the case, "the jury could have concluded that appellant did not willfully or purposely kill his child but rather

negligently shook the baby, knowing his conduct probably would cause injury." Id. at 166, 538 S.E.2d at 360.

The present case is factually distinct from Craig. Here, appellant does not admit to any negligent conduct that he knew "probably would cause injury." He blames the injuries to the child's mouth on an *accident*, and he offers no explanation for the other, serious bodily injuries documented in the autopsy. The uncontroverted medical evidence, on the other hand, established that J.L. died as a result of sustaining multiple, significant traumas to the head and abdomen while he was in appellant's care. Under these facts, an instruction for involuntary manslaughter would not be appropriate.

## III. CONCLUSION

For the foregoing reasons, we therefore affirm the decision of the trial court denying the proffered jury instructions and affirm appellant's convictions of felony murder and felony child abuse.

Affirmed.