UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judges Ortiz and Causey
Argued by videoconference


DALE ANDREW WOLFE

MEMORANDUM OPINION* BY
v.  Record No. 1051-20-4  JUDGE DORIS HENDERSON CAUSEY
MAY 3, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Fernando Villarroel (The Irving Law Firm, P.C., on brief), for
appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Dale Wolfe, appellant, was convicted by jury of second-degree murder and sentenced to

forty years of imprisonment. On appeal, he asserts that the trial court erred by rejecting his

proposed involuntary manslaughter jury instructions. He argues that because the record contains

more than a scintilla of evidence to support an unintentional killing, the court should have

permitted the proffered instructions. But, assuming without deciding that appellant is correct, we

find the alleged error was harmless given the facts and circumstances of this case. Therefore, we

affirm the trial court's judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

In late summer of 2018, the Prince William County Police Department responded to a domestic disturbance call. When they arrived at the scene, officers discovered a female body lying in "a massive amount of blood." There was "blood coming over the threshold" of the ajar front door and an "exceptional amount of blood on the floor." There was blood on the windows, blood on the curtains, and blood on the bed.

"[B]ased on how she looked and the number of wounds that she had and . . . the amount of blood that was gone," it was immediately clear that the woman was dead. Her eyes were "rolled back." She had visible "stab wounds to her stomach[,] and her throat was . . . clean cut." According to a paramedic who was at the scene, the victim was "completely exsanguinated," and the blood around her had started to coagulate.

On a bed not far from the victim, police noticed appellant with "a lot of blood" on him. There was "blood all the way from where [appellant] was to where the victim was." He had a cut on his left arm and was conscious but reportedly "catatonic." On the way to the hospital, medical providers applied a tourniquet to treat appellant's injury. They determined that he would need sutures and further treatment but noted that he had sustained no substantial blood loss. Appellant "was stable the entire time," offering "very little purposeful response."

Police interviewed appellant as part of the ensuing investigation. He told detectives that the victim followed him into the house before stabbing him and that he "got angry and started hitting [the victim] with whatever [he] could get [his] hands on." Appellant was subsequently

---

[1] "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002). We therefore view the evidence in the light most favorable to appellant.

charged with felony murder in violation of Code § 18.2-32. His trial commenced in October 2019.

The medical examiner who performed the autopsy testified at trial. She opined that the cause of death was homicide caused by "stab wounds to the head, neck[,] and abdomen, and blunt-force trauma to the head." While conducting the autopsy, she observed at least seven sharp force injuries and seventeen blunt force head injuries including a brain contusion. The victim also sustained at least nine blunt force injuries to her back and twenty-six blunt force injuries to her extremities.

Appellant testified in his own defense. He claimed that his recollection of the evening was unclear because, before the events leading to his arrest, he consumed "a cigarette of PCP" and "a couple shots of rum." He admitted, however, that the victim "showed up," and they smoked the cigarette of PCP on the porch. According to appellant, he told her to leave "right after." He testified that after he watched the victim leave, he went inside and fell asleep in a chair.

Appellant claimed he was awakened by what he thought was a home invasion. The trespasser allegedly stabbed him "repeatedly," which led to a violent struggle. Appellant testified that he had not "invited anyone into [his] home that evening and that he feared for his life." He explained that it was only after the commotion settled that he realized there had been no break-in. When asked if he had killed the victim, whom he had mistaken for an intruder, appellant testified that he did not know. He testified that he did not recognize the victim until after she stabbed him.

The trial court instructed the jury on second-degree murder and voluntary manslaughter. Also, the trial court permitted appellant's proposed justifiable self-defense jury instruction. But the Commonwealth objected to appellant's proffered instruction for involuntary manslaughter,

and the trial court sustained the objection. In response to the trial court's inquiry about what evidence "justifies an instruction for involuntary manslaughter," appellant's counsel stated that the jury could conclude appellant "was negligent in some way and that [the victim] ended up dead." Counsel further argued that the jury could find appellant's "acts were negligent enough that [he] could have shown a callous disregard for human life." The trial court rejected these arguments, and the jury convicted appellant of second-degree murder. The jury recommended a sentence of forty years of imprisonment. The trial court imposed the recommended sentence. This appeal follows.

STANDARD OF REVIEW

"As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Lienau v. Commonwealth*, 69 Va. App. 254, 263 (2018) (alterations in original) (quoting *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (*en banc*)), *aff'd upon reh'g en banc*, 69 Va. App. 780 (2019). "The trial court's 'broad discretion in giving or denying instructions requested' is reviewed for an abuse of discretion." *King*, 64 Va. App. at 586 (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (*en banc*)).

However, "[i]f there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction." *Delacruz v. Commonwealth*, 11 Va. App. 335, 338 (1990). But "such an instruction [must be] supported by some appreciable evidence." *Harris v. Commonwealth*, 134 Va. 688, 695 (1922). "A defendant is entitled to have the jury instructed only on those theories of the case that are supported by [more than a scintilla of] evidence." *Eaton v. Commonwealth*, 240 Va. 236, 255 (1990). "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a proposition against

- 4 -

the 'other credible evidence that negates' it." *Lienau*, 69 Va. App. at 264 (alteration in original) (quoting *Woolridge v. Commonwealth*, 29 Va. App. 339, 348 (1999)).

Additionally, if an instruction is offered for a lesser-included offense, the record must "provide the necessary quantum of independent evidence" to support the instruction. *Commonwealth v. Leal*, 265 Va. 142, 147 (2003). A defendant is not entitled to an instruction for a lesser-included offense unless the jury could "rationally find the defendant guilty of the lesser offense yet acquit him of the greater." *Edwards v. Commonwealth*, 65 Va. App. 655, 663 (2015) (quoting *Carter v. United States*, 530 U.S. 255, 261 n.3 (2000)).

ANALYSIS

"We have defined the common law crime of involuntary manslaughter as 'the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act; or in the improper performance of a lawful act.'" *Noakes v. Commonwealth*, 280 Va. 338, 345 (2010) (quoting *Mundy v. Commonwealth*, 144 Va. 609, 615 (1926)).

Voluntary manslaughter and second-degree murder are both lesser-included offenses of first-degree murder. *Puckett v. Commonwealth*, 182 Va. 237, 240 (1944). Voluntary manslaughter is the unlawful killing of another, "committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation." *Wilkins v. Commonwealth*, 176 Va. 580, 583 (1940). Second-degree murder, of which the jury convicted appellant, is defined as a malicious killing. *Turner v. Commonwealth*, 23 Va. App. 270, 274 (1996), *aff'd*, 255 Va. 1 (1997). "Malice and heat of passion cannot coexist." *Id.* at 275. "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992).

- 5 -

Appellant argues the trial court erred in refusing jury instructions related to involuntary manslaughter because there is more than a scintilla of evidence to support that theory. He contends that, based on his testimony at trial and his self-defense argument, the jury could have determined that the killing was (1) accidental as a matter of law, or (2) the result of appellant's unreasonable or excessive reaction. Appellant also asserts that the trial court improperly deprived the jury of the opportunity to consider the "evidence in relation to an involuntary manslaughter conviction." The Commonwealth conversely argues that there is not more than a scintilla of evidence that the killing was unintentional.

Assuming without deciding that the trial court erred in denying the proposed instruction, we conclude that any error was harmless. The evidence supporting appellant's guilt is overwhelming. And the alleged error is so insignificant by comparison, we can conclude the error failed to have any "substantial influence" on the verdict.[2]

"[N]on-constitutional error is harmless 'when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005 (1991) (*en banc*) (quoting Code § 8.01-678). In other words, "[n]on-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" *Bell v. Commonwealth*, 47 Va. App. 126, 140 n.4 (2005) (quoting *United States v. Lane*, 474 U.S. 438,

---

[2] Our conclusion is not predicated on a sufficiency-of-the-evidence analysis. Harmless error review "is not the same thing as simply asking 'whether the legally admitted evidence was sufficient' to support the conviction." *Commonwealth v. White*, 293 Va. 411, 422 (2017) (quoting *Satterwhite v. Texas*, 486 U.S. 249, 258-59 (1988)). A sufficiency analysis "asks whether a rational [factfinder] *could have* found the defendant guilty." *Id*. Harmless error analysis, however, asks whether the evidence supports "that a rational [factfinder] *would have* found the defendant guilty absent the error[.]" *Id*. (first and second alterations in original) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

450 (1986)).  "Thus, where the reviewing court is able to determine that the trial court's error in failing to instruct the jury could not have affected the verdict, that error is harmless."  *Turner*, 23 Va. App. at 276.

The evidence to support appellant's conviction is overwhelming.  The gruesome and severe nature of the physical evidence does not lend itself to anything other than an intentional killing.  Appellant sustained only a non-life-threatening laceration in the encounter.  The victim, in contrast, suffered multiple grievous wounds that left her body totally drained of blood.  The record is replete with testimony and exhibits depicting the copious amount of blood at the scene. Absent is an unequivocal, affirmative statement that appellant did not intend to kill the victim. He neither told the investigating detectives nor testified at trial that he killed the victim accidentally.  Additionally, to the extent appellant asserts a general entitlement to his proposed jury instructions or contends that the trial court should have provided involuntary manslaughter instructions, notwithstanding the lack of evidentiary support, we find such argument meritless. "[W]e have rejected the concept that a jury instruction on the lesser-included offense must always be given."  *Commonwealth v. Vaughn*, 263 Va. 31, 35 (2002).

There is no evidence to support a reasonable inference of involuntary manslaughter. Thus, we "can conclude, without usurping the jury's fact-finding function, that, had the error not occurred, the verdict would have been the same," *Lavinder*, 12 Va. App. at 1005, and the decision to deny the proposed instructions had no prejudicial effect on appellant.

Having reviewed the record, we determine "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error."  *Carter v. Commonwealth*, 293 Va. 537, 546 (2017) (quoting *Adams v. Commonwealth*, 275 Va. 260, 278 (2008)).  We therefore hold that, assuming the trial

court erred in refusing to instruct the jury about involuntary manslaughter, such error was harmless.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed*.