COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Causey and Bernhard


GREGORY RICARDO BURWELL

                                                    MEMORANDUM OPINION*
v.      Record No. 0023-24-1                        PER CURIAM
                                                    JULY 8, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Timothy J. Huffstutter,
Assistant Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Gregory Ricardo Burwell of

second-degree murder and use of a firearm in the commission of a felony. The trial court

sentenced Burwell to 45 years of incarceration. On appeal, Burwell argues that the trial court

erred in denying his motion to strike and refusing his proposed jury instruction. For the

following reasons, we affirm his conviction.[1]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

On the evening of July 3, 2018, Kelly Phillips went on a date. Phillips returned home between 5:00 a.m. and 5:30 a.m. on July 4. Around 6:00 a.m., Burwell knocked on Phillips's front door. Phillips's son, Kavon Phillips (Kavon), answered the door.

Kavon and his older brother, Kamren Poland, were familiar with Burwell as a friend of Phillips. They testified that Burwell mowed their lawn on a weekly basis, and a neighbor corroborated that he regularly saw Burwell at Phillips's home.

When Kavon answered the door, Burwell asked to see Phillips. Kavon, at the instruction of Phillips, told Burwell that Phillips was asleep. Burwell laughed "sarcastic[ally]," "[l]ike he knew [Kavon] was lying." Burwell walked behind the house and collected some of his items. He placed the items in his red Ford pickup truck and drove off. Burwell returned to Phillips's home a second time, and Poland answered the door. Poland told Burwell that Phillips was asleep and Burwell "chuckl[ed]" and said "no, she's not." Poland closed the door.

Later that morning, Fairen Randle (Fairen) woke up to a woman screaming and heard gunshots. Fairen's mother, Treeva Randle (Treeva), also heard gunshots, which she mistook for fireworks. Treeva remembered hearing "more than four" gunshots, possibly seven. Neighbor Carolyn Collins heard a "knocking or fire" sound which she also mistook for fireworks.

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Another neighbor, O.B.,[3] heard a gunshot and saw a woman running. She heard the woman scream "[h]elp, I have been shot." In the same moment, O.B. saw a man run across the street and get into a red truck. She saw something in the man's hand that was "about the size of a handgun." Fairen, Treeva, and O.B. all witnessed the woman bang on the door of a neighbor's house and then fall backwards on the ground. When the woman fell, Treeva and Fairen noticed a red truck drive off. Fairen testified that the truck belonged to Burwell; Fairen was familiar with Burwell and regularly saw him at Phillips's home. She stated that a black male was driving the truck.

Collins testified that the red truck sped by her home after she heard the sound. She also described the driver as a black male. There was no one else in the truck. Several neighbors called 911.

Officers responded to the 911 call. They found Phillips lying on her back, unresponsive. The officers observed a small hole in her left thigh, blood on her shirt and face, and a gunshot wound on her right arm. Phillips was taken to the hospital where she was pronounced dead. An autopsy determined that Phillips was shot four times, and one of the wounds was fatal.

Later that same day, Burwell visited his brother, Ronald Burwell (Ronald), and said he needed to talk. Burwell told Ronald, "[y]ou know, me and homegirl busted up. He stated that he hit Phillips and she "ran down the steps down the alley"; he "went behind her," "pulled out his gun," and "started shooting." Burwell told Ronald he did not think he struck Phillips. Ronald then asked if Burwell wanted to attend their brother's cookout and Burwell agreed.

On the way to the cookout, police officers conducted a traffic stop. When they informed Ronald and Burwell of their investigation of Phillips's death, Ronald "knew right then it was

---

[3] We use initials because O.B. is a minor.

[Burwell]." Burwell told the officers that he was at Phillips's residence but did not specify what time.

On July 5, Ronald gathered his family members and a police officer at a local church and informed them of what Burwell disclosed to him. The officer spoke with Burwell again; Burwell acknowledged he was at Phillips's residence but stated they just "talked" and denied shooting Phillips.

As part of their investigation, officers collected letters exchanged between Phillips and Burwell, and Phillips's fingernail clippings. The forensic technician who analyzed the letters testified that some of the letters Burwell wrote to Phillips were "not as friendly" as others. In one letter, Burwell discussed anger and retaliation and wrote, "Bye-bye Kelly."

A forensic scientist performed DNA analyses on Phillips's left and right fingernail clippings and was not able to eliminate Burwell as a contributor of the DNA on Phillips's right fingernails. Further statistical analysis on the DNA under Phillips's right fingernails showed that the match with Burwell's DNA was "23 quintillion [times] more probable than a coincidental match to an unrelated African American person"; "29 quintillion times more probable than a coincidental [match to an] unrelated Caucasian person"; and "14 quintillion times more probable than a coincidental match to an unrelated Hispanic person." Officers also examined Burwell's cell phone records from July 4, which indicated that his cell phone was in the area of the shooting at the time Phillips was killed.

Burwell presented evidence in his defense. He testified that his and Phillips's relationship started as a friendship but turned romantic. He agreed that he went to Phillips's house on a regular basis to cut the grass and perform other tasks. Burwell stated he also helped with Phillips's children and purchased items for her home. He insisted that he and Phillips never had an argument, a physical confrontation, or exchanged "cross words."

Burwell testified that he went to Phillips's home on three separate occasions on July 4. The first time was around 6:00 a.m., and the second visit was around 9:00 a.m. or 10:00 a.m. Burwell returned a third time that morning to drop off some dry cleaning. He testified that when he got out of his truck, he saw Phillips arguing with a white male who looked like he was in his early thirties. Burwell stated the man made a motion as if he was reaching for something. Burwell claimed that he left without getting involved because he did not want to get shot. Burwell said he did not call the police because he did not trust law enforcement. Burwell also insisted that Ronald's testimony was "completely fabricated" and he denied shooting and killing Phillips.

Samuel Moore also testified for the defense. Moore testified that he was in the cemetery near the location of the shooting when he heard "four to six" gunshots. He stated that he saw a "darker-skinned gentleman" who was twenty to thirty years old running alongside the cemetery. Moore admitted that in his initial statement to the police he said the man who he saw was a white male. On cross examination, Moore agreed that a month before trial he told the prosecutor, defense counsel, and the police that the individual was a black male. In any event, however, a police officer (in 2023 at the time of the trial) determined there was no view from the cemetery (on July 4, 2018) to the area where Moore stated he saw the man running.

At the conclusion of all the evidence, Burwell renewed his motion to strike. He argued that Burwell's testimony and Moore's initial statement to the police proved that the shooter was "completely inconsistent with Mr. Burwell's description." The trial court denied the motion, finding that witness credibility was a matter for the jury's determination.

Before closing argument, the parties discussed jury instructions. Burwell proposed a "waterfall" instruction that offered second-degree murder, voluntary manslaughter, and involuntary manslaughter as possible findings for the jury. He argued that his "defense [was]

- 5 -

obviously not heat of passion or some kind of negligence" but that "both of those things, particularly the involuntary manslaughter, would flow from the available evidence." Burwell contended that the instruction did not "have to match up with either party's theory of the case." In Burwell's view, that he was initially charged with reckless handling of a firearm, combined with his admission that he shot at Phillips but did not think he struck her, was "far more than the scintilla" of evidence that he acted with reckless disregard for human life.[4] Burwell further argued that Ronald's testimony—that Burwell said he had a physical altercation with Phillips— demonstrated that he acted in the heat of passion. He claimed there was a "reasonable inference" that "Phillips initiated . . . physical contact because Mr. Burwell showed up unannounced."

The court rejected Burwell's proposed instruction. The court found that there was insufficient evidence of "any type of negligence or accident" or heat of passion to support the instruction on voluntary or involuntary manslaughter.

The jury found Burwell guilty of second-degree murder and use of a firearm during the commission of a murder. This appeal followed.

ANALYSIS

I. Sufficiency of the Evidence

A. Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a

---

[4] The trial court granted Burwell's motion to strike the charge of reckless handling of a firearm at the end of the Commonwealth's evidence.

reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). "The fact finder . . . is entitled to draw inferences from proved facts, so long as the inferences are reasonable and justified." *Moody v. Commonwealth*, 28 Va. App. 702, 706 (1998).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). "The trier of fact is not required to accept a witness' testimony, but instead is free to 'rely on it in whole, in part, or reject it completely.'"

*Montague v. Commonwealth*, 40 Va. App. 430, 436 (2003) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991)). In addition, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

      B. The evidence was sufficient to convict Burwell of second-degree murder and use of a firearm in the commission of a felony.

Burwell argues that the Commonwealth's evidence "failed to prove that [he] in fact killed Kelly Phillips." Reciting his motion to strike, Burwell states that no one directly identified him as the shooter or asserted that he had threatened or acted violently towards Phillips. Burwell also argues that both his and Moore's descriptions of the individual they saw leaving the scene were consistent and did not match Burwell's appearance.

Ronald testified that Burrell said he hit Phillips and then shot at her multiple times as she ran away. Multiple witnesses heard gunshots, saw Phillips screaming and seeking help, and noticed Burwell's truck leaving the area immediately after the shooting. One witness in particular saw Burwell "run" to his truck and noticed an item in his hand that was "about the size of a handgun." Burwell's DNA was found on Phillips's right fingernails and his cell phone was in the area of the shooting at the time Phillips was killed. Notably, Burwell testified that he fled before speaking to Phillips, but when he spoke with the police, he told them that he and Phillips "talked" when he was there.

Additionally, the jury had the opportunity to see and hear the witnesses testify and credited the testimony of the Commonwealth's witnesses over Burwell's. And, contrary to Burwell's argument, Moore's testimony ultimately corroborated that of the Commonwealth's witnesses—that a black male fled the scene after they heard gunshots. Accordingly, the evidence

- 8 -

was sufficient to prove beyond a reasonable doubt that Burwell shot and killed Phillips and that he was guilty of second-degree murder and use of a firearm in the commission of a felony.

## II. Proposed Jury Instruction

### A. Standard of Review

"As a general rule, the matter of granting and denying instructions . . . rest[s] in the sound discretion of the trial court." *Dandridge v. Commonwealth*, 72 Va. App. 669, 679 (2021) (alterations in original) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 263 (2018)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)).

"[W]hen reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Dandridge*, 72 Va. App. at 676 (quoting *Lienau*, 69 Va. App. at 260). "[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)); *see Williams v. Commonwealth*, 64 Va. App. 240, 246 (2015) ("Although a defendant 'is entitled to an instruction upon his theory of the case,' this rule can be invoked '[o]nly when such instruction is supported by *some appreciable evidence*.'" (alteration in original) (quoting *Harris v. Commonwealth*, 134 Va. 688, 695 (1922))). "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." *Dandridge*, 72 Va. App. at 679 (alteration in original) (quoting *Lienau*, 69 Va. App. at 264). "[T]he defendant is entitled to an instruction for a lesser-included offense if a jury could

'rationally find the defendant guilty of the lesser offense yet acquit him of the greater.'" *Id.* at 680 (quoting *Edwards v. Commonwealth*, 65 Va. App. 655, 663 (2015)).

B.  The court did not err in denying Burwell's proposed jury instruction.

Burwell asserts that his proposed jury instruction, which allowed the jury to find Burwell guilty of murder, or voluntary or involuntary manslaughter, "was supported by more than a scintilla of evidence" and "covered all the issues which the evidence fairly raise[d]."

"Murder at common law is a homicide committed with malice." *Pugh v. Commonwealth*, 223 Va. 663, 667 (1982) (citing *Biddle* v. *Commonwealth*, 206 Va. 14, 20 (1965)). "[M]alice may be implied from the deliberate use of a deadly weapon." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)).

"Manslaughter . . . is the unlawful killing of another without malice." *Dandridge*, 72 Va. App. at 681 (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "Voluntary manslaughter is a lesser-included offense of second-degree murder." *Id.* at 680. "[T]o reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." *Id.* at 681 (quoting *Canipe*, 25 Va. App. at 643).

"The common law crime of involuntary manslaughter consists of two elements: 1) the accidental killing of a person, contrary to the intention of the parties; and 2) the death occurs during the defendant's performance of an unlawful but not felonious act, or in the defendant's improper execution of a lawful act." *Brown v. Commonwealth*, 278 Va. 523, 528 (2009) (citing *West v. Director, Dep't of Corrs.*, 273 Va. 56, 63-64 (2007)).

This Court has determined that "[i]f the evidence is sufficient to support 'a conviction of the crime charged, and there is no *independent* evidence warranting a conviction [of the lesser-included offense], an instruction on the lesser-included offense need not be given.'" *Williams*, 64 Va. App. at 247 (alterations in original) (quoting *Commonwealth v. Vaughn*, 263

- 10 -

Va. 31, 36 (2002)). "[T]he jury's 'ability to reject evidence does not supply the *affirmative* evidence necessary to support a jury instruction.'" *Id.*; *see Commonwealth v. Donkor*, 256 Va. 443, 446-47 (1998) ("[T]he jury's ability to reject evidence [does not operate] as a substitute for the evidentiary support required to grant a defendant's request for an instruction on a lesser-included offense.") Thus, Burwell "must provide independent, affirmative evidence supporting the absence" of malice to be entitled to an instruction for either form of manslaughter. *Williams*, 64 Va. App. at 247-48.

Viewing the evidence in the light most favorable to Burwell, we find that an instruction for voluntary and involuntary manslaughter was not supported by the evidence at trial. Burwell's defense was that he was not present when Phillips was killed, and he did not shoot Phillips. If the jury accepted Burwell's evidence and theory of the case, he was entitled to an acquittal, not conviction of a lesser-included offense. Further, the Commonwealth's evidence did not tend to show that Phillips initiated physical contact or that Burwell accidentally shot Phillips. Ronald testified that Burwell said he hit Phillips, she fled, and he purposefully fired at her as she ran. Burwell's proposed instruction was not supported by independent affirmative evidence that he committed either form of manslaughter. Accordingly, the trial court did not err by denying his proposed instruction.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*